# Illinois Official Reports

## Appellate Court

---

**In re N.G., 2017 IL App (3d) 160277**

---

| | |
|---|---|
| Appellate Court Caption | *In re* N.G., a/k/a N.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Floyd F., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-16-0277 |
| Filed | January 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-JA-152; the Hon. Paula Gomora, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Neil J. Adams, of Joliet, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Kristen N. Messamore, of Joliet, guardian *ad litem*. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

# OPINION

¶ 1 The circuit court entered orders finding the respondent, Floyd F., to be an unfit parent and terminating his parental rights to the minor, N.G. On appeal, the respondent argues that the circuit court's finding of unfitness based on depravity was error because his 2008 felony conviction was based on a statute that was declared unconstitutional by the supreme court and it must be vacated. We reverse and remand the case for further proceedings.

¶ 2                                                    FACTS

¶ 3 On December 19, 2011, a juvenile petition was filed that alleged the minor was neglected due to an injurious environment. The minor's mother admitted the allegations of the petition, and the minor was adjudicated neglected on September 19, 2012. After a dispositional hearing, the circuit court made the minor a ward of the court, granted guardianship to the Department of Children and Family Services with the right to place, and found, *inter alia*, the respondent to be an unfit parent.

¶ 4 In February 2016, the State sought to terminate the respondent's parental rights to the minor, alleging he was depraved based on his three felony convictions: (1) a Class 4 felony conviction for aggravated unlawful use of a weapon (circuit court case No. 08-CF-910), (2) a Class 2 felony conviction for unlawful use of a weapon by a felon (circuit court case No. 09-CF-10), and (3) a Class X felony conviction for armed habitual criminal (circuit court case No. 11-CF-201).

¶ 5 At the termination hearing in May 2016, the State presented certified copies of the respondent's three felony convictions. Counsel for the respondent informed the court that there was an appeal pending regarding the respondent's 2008 conviction and objected to the introduction of the certified copy of that conviction. The court overruled the objection, stating, "I don't believe the appeal has any effect on the judgment of conviction." The transcript of that hearing reflects the following discussion:

> "MR. PAVUR: Your Honor, my client tells me that on the third exhibit, that there is a pending appeal going on. And I am not exactly sure how that would effect [sic] it. But I just couldn't let it go by.
>
> So I do have an objection to that one based on the fact there is an ongoing appeal having been filed challenging the constitutionality of the arrest.
>
> MS. RIPPY: Judge, I have no information, nor has this conviction been reversed. If there is an appeal pending, this conviction still stands until the Appellate Court states otherwise. So I ask to admit People's Exhibit 3.
>
> THE COURT: I don't believe the appeal has any effect on the judgment of conviction. Over your objection, People's 3 is admitted."

¶ 6 Other evidence presented at the termination hearing established that the respondent was currently incarcerated on his armed habitual criminal conviction, for which he received a sentence of 9½ years of imprisonment, and he was projected to be paroled in 2019. At the close of the hearing, the circuit court found that the respondent was depraved and, therefore, unfit. After a best interest hearing on the same date, the court found that it was in the minor's best interest to terminate the respondent's parental rights. The respondent appealed.

Supplemental Briefing

¶ 8 We sought and obtained documents from the Will County circuit court regarding the respondent's 2008 conviction for aggravated unlawful use of a weapon and 2011 conviction for armed habitual criminal. Those documents indicated that the respondent pled guilty to aggravated unlawful use of a weapon in the 2008 case pursuant to section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) and that there was no appeal or other matter pending regarding that case at any time after October 2008. However, there is a pending postconviction petition in the 2011 case, which alleges that the respondent's armed habitual criminal conviction cannot stand because it was predicated in part on his 2008 conviction, which has been rendered a nullity by *People v. Aguilar*, 2013 IL 112116.

¶ 9 Upon receipt of these documents, we asked the parties to provide additional briefing pursuant to the following minute order:

> "The panel assigned to the above-captioned case has secured, *sua sponte*, (1) the indictment in case number 08-CF-910, reciting that the respondent in the instant case was charged with two counts of aggravated unlawful use of a weapon in violation of 720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2008), the section of the statute found unconstitutional by the Illinois Supreme Court in *People v. Aguilar*, 2013 IL 112116, (2) the amended judgment-sentence showing he was found guilty of violating 720 ILCS 5/24-1.6(a)(1)(3), a Class 4 felony, and (3) the circuit court's docket entry that states the court accepted the defendant's guilty plea to aggravated unlawful use of a weapon (Class 4 felony) as charged in Count II of the indictment.
>
> The parties are asked to answer the following question and to submit additional documents pertinent to supporting your answer: ARE THE PARTIES AWARE OF ANY REASON WHY THIS COURT COULD NOT TAKE JUDICIAL NOTICE OF THE IDENTIFIED DOCUMENTS AS A FACTUAL BASIS FOR FINDING THE 2008 CONVICTION AT ISSUE IN THIS APPEAL VOID?"

¶ 10 The parties filed their supplemental briefs, which we have considered in reaching the following disposition.

¶ 11 ANALYSIS

¶ 12 The respondent's sole issue in this appeal is his contention that the circuit court erred when it found him to be an unfit parent based on depravity. The sole basis for this contention is that his 2008 conviction is a nullity because the statutory provision under which he was prosecuted and pled guilty in 2008 was found unconstitutional by our supreme court in *Aguilar*. Resolution of this issue places us at the junction of several recent supreme court decisions: *Aguilar*, 2013 IL 112116; *People v. McFadden*, 2016 IL 117424; *People v. Castleberry*, 2015 IL 116916; *People v. Thompson*, 209 Ill. 2d 19 (2004) (*Ernest Thompson*); and *People v. Thompson*, 2015 IL 118151 (*Dennis Thompson*).

¶ 13 In its original responsive brief, the State asserted that the respondent had forfeited this issue by failing to raise it in the trial court and by failing, in his initial brief, to ask this court to consider his claim under the plain error doctrine. We reserve resolution of the State's forfeiture challenge to a later point in this decision.

¶ 14 We begin with the State's asserted basis for the finding of depravity. In relevant part, section 1(D)(i) of the Adoption Act provides that a rebuttable presumption arises that a parent is depraved (and is therefore an unfit person) if he or she has been convicted of at least three felonies in Illinois and at least one of those convictions has occurred within the five years preceding the filing of the termination petition. 750 ILCS 50/1(D)(i) (West 2014). A circuit court's determination that a parent is an unfit person will not be overturned unless it is against the manifest weight of the evidence. *In re E.C.*, 337 Ill. App. 3d 391, 398 (2003).

¶ 15 Here, the respondent admits that his three convictions technically satisfied these requirements such that he could legally be found an unfit person due to depravity. See 750 ILCS 50/1(D)(i) (West 2014). However, the respondent argues that the circuit court should not have included his 2008 conviction (for Class 4 felony aggravated unlawful use of a weapon) in the depravity determination because the specific section of the statute under which he was prosecuted and convicted has since been declared unconstitutional.

¶ 16 In relevant part, the version of the aggravated unlawful use of a weapon statute which served as the basis for the respondent's 2008 conviction stated as follows:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
> > (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm ***
> >
> > *** and
> >
> > (3) One of the following factors is present:
> >
> > > (A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense[.]" 720 ILCS 5/24-1.6 (West 2008).

In *Aguilar*, our supreme court held that section 24-1.6(a)(1), (a)(3)(A) of the aggravated unlawful use of a weapon by a felon statute was unconstitutional on its face. *Aguilar*, 2013 IL 112116, ¶ 22; see also *People v. Burns*, 2015 IL 117387, ¶ 21. When a statute is held to be unconstitutional on its face, it is said to be void *ab initio*. *Hill v. Cowen*, 202 Ill. 2d 151, 156 (2002). In other words, "the statute was constitutionally infirm from the moment of its enactment and, therefore, is unenforceable." *McFadden*, 2016 IL 117424, ¶ 17.

¶ 17 We noted that the certified copies of respondent's criminal convictions included in the original record in this civil case did not reflect the specific provision under which the respondent was convicted for aggravated unlawful use of a weapon. Because *Aguilar* did not invalidate the entirety of the aggravated unlawful use of a weapon statute, that information is vital in this case. We have, therefore, supplemented the record with documents from the Will County circuit court that confirm the statutory basis of the respondent's 2008 conviction. The parties' responses to our request for supplemental briefing have not identified any compelling reason why we cannot take judicial notice of these documents for the purposes of resolving the instant appeal. The question becomes, then, whether we are able to grant the relief the respondent requests in this case based on a clearly meritorious claim that his 2008 conviction for aggravated unlawful use of a weapon is a nullity.

¶ 18 The supreme court majority stated in *McFadden*:

> "It is axiomatic that no judgment, including a judgment of conviction, is deemed vacated until a court with reviewing authority has so declared. As with any

conviction, a conviction is treated as valid until the judicial process has declared otherwise by direct appeal or collateral attack. Although *Aguilar* may provide a basis for vacating defendant's prior 2002 [aggravated unlawful use of a weapon] conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the [unlawful use of a weapon] by a felon offense, defendant had a judgment of conviction that had not been vacated and that made it unlawful for him to possess firearms." *Id.* ¶ 31.

Clearly, invalidation of the instant respondent's 2008 conviction for aggravated unlawful use of a weapon did not occur automatically; it must be invalidated through a direct appeal or a collateral attack. *Id.*

¶ 19 There are two statutory options for collaterally attacking an invalid judgment in a criminal case: a postconviction petition filed pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) or a petition filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)). *People v. Helgesen*, 347 Ill. App. 3d 672, 675-76 (2004) (citing *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 105 (2002), and *Ernest Thompson*, 209 Ill. 2d 19). The respondent has pursued a postconviction petition in his 2011 criminal case claiming that his 2008 conviction was a nullity and could not serve as a basis for an armed habitual criminal charge. That petition is not, however, before us in this civil appeal.

¶ 20 While this case is neither a direct appeal from the respondent's 2008 conviction, nor a postconviction or section 2-1401 challenge to that conviction, the respondent does, nonetheless, seek to have the conviction vacated in an action that is collateral to the criminal case. "[A] collateral attack on a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment. [Citation.]" Black's Law Dictionary 261 (6th ed. 1990). The instant case is a civil action to determine the appropriate custody of the minor, N.G., and, more specifically, the fitness of his biological father to maintain a role in N.G.'s life. The continued existence of the 2008 conviction is pivotal to that determination on the basis asserted by the State. This action is clearly collateral to respondent's 2008 criminal case.

¶ 21 We now turn to the question of whether we have the ability, in this proceeding, to vacate the respondent's conviction, and we find that our authority to do so is explicitly grounded in supreme court precedent. In *Dennis Thompson*, 2015 IL 118151, the supreme court described, as follows, three forms of voidness recognized by Illinois law:

"A voidness challenge based on a lack of personal or subject matter jurisdiction is not subject to forfeiture or other procedural restraints because a judgment entered by a court without jurisdiction 'may be challenged in perpetuity.' [Citation.]

A second type of voidness challenge that is exempt from forfeiture and may be raised at any time involves a challenge to a final judgment based on a facially unconstitutional statute that is void *ab initio*. When a statute is declared facially unconstitutional and void *ab initio*, it means that the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable. [Citation.] ***

A third type of voidness challenge to a final judgment under section 2-1401 recognized by this court is a challenge to a sentence that does not conform to the applicable sentencing statute. [Citation.] This type of challenge is based on the 'void

sentence rule' ***, holding that a sentence that does not conform to a statutory requirement is void. Recently, however, this court abolished the void sentence rule. *People v. Castleberry*, 2015 IL 116916, ¶ 19. Consequently, that type of challenge is no longer valid." *Id.* ¶¶ 31-33.

¶ 22    In a pre-*Castleberry* case, the court considered a claim, raised for the first time in a postconviction proceeding, that the extended-term portion of a sentence for violation of an order of protection was void and could be attacked at any time. *Ernest Thompson*, 209 Ill. 2d 19. The court agreed with the defendant, finding:

"A void order may be attacked at any time or in any court, either directly or collaterally. An argument that an order or judgment is void is not subject to waiver. Defendant's argument that the extended-term portion of his sentence is void does not depend for its viability on his postconviction petition. *In fact, courts have an independent duty to vacate void orders and may* sua sponte *declare an order void.* [Citation.]" (Emphasis added.) *Id.* at 27.

Even though *Dennis Thompson*'s *basis* for voidness was invalidated in *Castleberry*, the 2015 *Ernest Thompson* decision makes it clear that the procedural voidness principles articulated in the earlier decision still apply to the two remaining valid bases for voidness (lack of jurisdiction and void *ab initio*).

¶ 23    The two *Thompson* cases amply demonstrate that the State's forfeiture challenge lacks merit. Again, the respondent's claim may be raised at any time in any court. *Id.*

¶ 24    Despite the language stating that courts have an independent duty to *sua sponte* declare an order void, the *McFadden* court declined to do so. We, therefore, consider whether its reasons for not doing so are equally applicable to the instant case. For the reasons that follow, we conclude that this case is significantly different and those reasons do not apply here. The *McFadden* majority first noted that the defendant

"is not seeking to apply the void *ab initio* doctrine to vacate his prior 2002 [aggravated unlawful use of a weapon] conviction. Rather, defendant is seeking to reverse his 2008 conviction for [unlawful use of a weapon] by a felon, a constitutionally valid offense, by challenging the sufficiency of the evidence to convict him. This distinction presents a different question, namely whether a prior conviction, which is asserted to be based on a statute that has been subsequently declared facially unconstitutional, may nevertheless serve as proof of the predicate felony conviction in prosecuting the offense of [unlawful use of a weapon] by a felon." *McFadden*, 2016 IL 117424, ¶ 21.

¶ 25    In the instant case, the respondent is not claiming, as McFadden was, that his void conviction served as the predicate for a second conviction, both of which occurred prior to the invalidation of the statute and only the second of which he is seeking to vacate. While that may be the posture of the postconviction petition in the respondent's 2011 habitual criminal case, it is not his argument in the instant case. Rather, here he is contending that his 2008 conviction had been declared a nullity in 2013; that conviction should be recognized as null and void, and vacated; and that this void conviction could not serve in 2016 as a basis for the imposition of a civil penalty—the loss of his parental rights. We believe these differences distinguish the instant case from *McFadden* in legally significant ways and that *McFadden* does not preclude, on this basis, the action we take here.

¶ 26    The court's second reason for rejecting McFadden's argument was that, "[a]lthough for purposes of this appeal, the State does not dispute that defendant's 2002 conviction is premised on an unconstitutional statute, the record does not confirm defendant's assertion." *Id.* ¶ 32. The court notes that although six separate charges under various statutory sections were alleged, defendant was only convicted on one, and there is no confirmation in the record that he pled guilty to the unconstitutional section. *Id.* ¶ 33.

¶ 27    As previously indicated, we have, *sua sponte*, supplemented the record in this case. We have done so because we believe that a refusal to vacate the 2008 conviction at this juncture would elevate form over substance, constitute an affront to judicial economy, and, perhaps most importantly, result in an *unfounded* deprivation of a fundamental liberty interest (see, *e.g.*, *Obergefell v. Hodges*, 576 U.S. ___, ___, 135 S. Ct. 2584, 2600 (2015) (recognizing, while analyzing the right to marry, the great importance of parental rights and quoting *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) for the statement that "the right 'to marry, establish a home and bring up children' is a central part of the liberty protected by the Due Process Clause [citation]")).

¶ 28    The additions to the record include documents from the 2008 felony case confirming that respondent was charged in 2008 with two counts of aggravated unlawful use of a weapon, both of which alleged violations of the same unconstitutional section of the statute; that he pled guilty to one count; and that the judgment expressly confirmed his conviction under the section that had been declared unconstitutional. There can be no doubt that respondent's 2008 conviction was pursuant to a statute that was void *ab initio* and was, therefore, a nullity. This fact, too, constitutes a significant distinction from *McFadden*, allowing us to reach a different outcome.

¶ 29    Under *Aguilar*, the respondent's 2008 conviction for aggravated unlawful use of a weapon was a nullity from the moment it was entered. It is a nullity now; one that has not yet been officially vacated. In this case, the State chose to pursue the termination of the respondent's parental rights based only on depravity premised on three felony convictions. Without the 2008 conviction, the State cannot establish that the respondent was depraved pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2014)), and therefore the respondent's parental rights could not have been terminated on that basis.

¶ 30    We find this is an action collateral to the 2008 criminal prosecution; there is, unlike the situation in *McFadden*, no dispute about which conviction the respondent is attacking and no dispute about which section of the statute was the basis for that conviction; and we are indisputably a court with reviewing authority.

¶ 31    We therefore find the respondent's 2008 conviction for aggravated unlawful use of a weapon null and void and hold that it cannot serve as a basis for a depravity consideration pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2014)). See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994) (stating that a reviewing court has the discretion to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the enforcement of a judgment, that the case may require"); *People v. Stoffel*, 239 Ill. 2d 314, 330 (2010) (addressing the merits of a postconviction petition, rather than remanding the case for the merits to be considered, "[i]n the interests of judicial economy"). Accordingly, we vacate the 2008 conviction, reverse the circuit court's unfitness finding and, reverse, by necessity, the court's

best interest determination, and remand the case for further proceedings consistent with this decision.

¶ 32                                CONCLUSION

¶ 33        The judgment of the circuit court of Will County is reversed and the case is remanded for further proceedings.

¶ 34        Reversed and remanded.

¶ 35        JUSTICE WRIGHT, dissenting.

¶ 36        I agree that a unique solution is required in this case to prevent a miscarriage of justice with respect to father's parental rights. I respectfully observe the juvenile court judge was not fully informed that the viability of the conviction in case No. 11-CF-201 was *simultaneously* being considered by another judge in the same circuit.

¶ 37        Based on this unique record, I would take a conservative approach and vacate the order terminating father's parental rights without addressing the merits of the pending petitions in case No. 11-CF-201. Upon remand, the trial court should be directed to postpone the hearing on the petition to terminate father's parental rights pending the ruling of the circuit court in the criminal proceedings. I respectfully suggest that the interests of judicial economy may warrant the assignment of one judge to hear both cases in an expedited fashion.

¶ 38        Here, the record is unique because the viability of father's conviction in case No. 11-CF-201 was *simultaneously* under consideration in a different division of the circuit court on the date he lost his parental rights. For reasons not apparent of record, neither father's attorney, the child's guardian *ad litem*, nor the attorney representing the State asked the trial court to postpone the juvenile proceeding or consolidate the criminal matter with the juvenile case in the spirit of Illinois Supreme Court Rule 903 (eff. Mar. 8, 2016). This is a classic case of one hand not being aware of what the other hand was doing, simply due to the volume of pending cases in various courtrooms of a busy circuit court.

¶ 39        I respectfully disagree that this court should vacate the 2008 criminal conviction in order to resolve the serious issues in this appeal. I have concerns that the precedent flowing from this decision to vacate a criminal conviction in a juvenile case would have far reaching, but unintended consequences we have yet to consider.